UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL C. WAGNER, | |
| Plaintiff, | No. 24 CV 6113 |
| v. | Judge Manish S. Shah |
| VILLAGE OF HAMPSHIRE, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Wagner was arrested for driving under the influence when he was found drunk in the sleeper cab of his tractor trailer. After a bench trial, he was found not guilty. He sues the Village of Hampshire for malicious prosecution, false imprisonment, and violations of the Fourth Amendment to the U.S. Constitution and Article I, Section 6 of the Illinois Constitution. The Village moves for summary judgment. For the reasons discussed below, the motion is granted.

I. **Legal Standards**

A motion for summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A defendant is entitled to summary judgment if the plaintiff "cannot present sufficient evidence to create a dispute of material fact regarding any essential element of her legal claims on which she bears the burden of proof." *Burton v. Bd. of Regents*, 851 F.3d 690, 694 (7th Cir.

1

2017). I view all the facts and draw reasonable inferences in favor of the non-moving party to determine whether summary judgment is appropriate. *See Uebelacker v. Rock Energy Coop.*, 54 F.4th 1008, 1010 (7th Cir. 2022).

## II.  Facts

Plaintiff Daniel Wagner was a semitruck driver for Benefit Trucking, and from December 15 to 20, 2022, he was parked at the T.A. Truck Stop in Hampshire, Illinois, waiting for repairs. [26] ¶ 5.[1] In the early evening on December 20, a Benefit Trucking manager called the Hampshire Police Department to ask for a welfare check on a Benefit driver parked at the T.A. Truck Stop. [26] ¶ 6. Sergeant Cody Grindley responded to the truck stop, where he saw the Benefit semitruck. [26] ¶¶ 4, 7.

Grindley knocked on the door of the cab, got no response, and moved back to knock on the side of the sleeper portion of the cab. [26] ¶ 8. A few seconds later, Wagner came to the driver's door and unlocked it. [26] ¶ 8. Wagner was visibly drunk and smelled of alcohol. [26] ¶¶ 10–12. When asked if he had been drinking, Wagner told Grindley he had drunk a quarter liter of vodka. [26] ¶ 12. Wagner was intoxicated with a blood alcohol content above the legal limit. [26] ¶ 13.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings. In the case of citations to depositions, I also use the deposition transcript's original page numbers. The facts are largely taken from the plaintiff's response to defendant's Local Rule 56.1 statement of facts, [26], where both the asserted fact and the opposing party's response are set forth in one document. Any asserted fact that is not controverted by reference to specific, admissible evidence is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments in the statement of facts. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006). The parties dispute only one fact. [26] ¶ 15. To the extent the disputed fact is relevant and the parties rely on admissible evidence, I include both sides' version, understanding that the nonmovant is entitled to favorable inferences.

The heat was on in Wagner's trunk. [26] ¶ 14. Wagner testified that the truck ran overnight "off an APU, which is battery-operated, that runs the heat, AC, electric, all that." [21-3] at 25 (25:2–8). If the battery got too low, the engine automatically restarted to recharge the batteries; once the batteries were charged, the engine would shut itself off. [21-3] at 25 (25:13–16). Wagner's daily log, which included "engine power up" and "engine shutdown" data, *see* [26-1] at 3, 5, 7-8, had no data showing the engine was running on December 20, 2022. [26-1] at 1.

Wagner's keys were in the "side box," which is a compartment underneath the bed in the sleeper section of the car, and accessible from outside of the cab. [26] ¶ 16. The side box is locked or unlocked electronically from inside of the cab. [26] ¶ 17. Wagner stored other items, including tools, boots, road flares, tire chains, and a fire extinguisher in the side box. [26] ¶ 18. Wagner had to access the side box from the door outside the truck because his television mount prevented him from being able to access the box from inside the truck. [26] ¶ 19. Accessing the side box from inside the cab would require Wagner to remove the television and wall mount from the wall and then figure out how to work the latch. [26] ¶ 20. Wagner insisted to Grindley that because he needed to leave his cab to get the keys, he should not be guilty of driving under the influence. [26] ¶ 21.

Wagner was arrested for driving under the influence and charged with a misdemeanor DUI. [26] ¶¶ 23, 25. He submitted to a breathalyzer test, which showed a blood alcohol content of .379. [26] ¶ 24. A bench trial was held before the Circuit Court of Kane County. [26] ¶ 25. After testimony ended, the circuit court took

additional time to research Illinois law and could find no case law applying the driving under the influence law to semitrucks parked overnight. [26] ¶ 29. The circuit court found that the government had not proven physical control of the truck, because the keys were not accessible to Wagner, and found Wagner not guilty of driving under the influence. [26] ¶ 30.

## III.    Analysis

### A.    Motion to Withdraw Admission

Wagner asks the court to excuse his failure to timely respond to the Village's Requests for Admission, specifically about two disputed facts: whether the engine was running and the keys were accessible. [25] at 5. At this stage, the only disputed fact between the parties is whether Wagner's truck engine was running. [26] ¶ 15.

Under Rule 36(b), matters that are admitted are "conclusively established." Fed. R. Civ. P. 36(b); *Banos v. City of Chicago*, 398 F.3d 889, 892 (7th Cir. 2005). I can permit a party to rescind a prior admission if doing so "better serves the presentation of the merits of the case and the party who benefits from the admissions (usually by relying on them) is not prejudiced." *Banos*, 398 F.3d at 892; Fed. R. Civ. P. 36(b).

I take Wagner's request to excuse his failure to timely respond as a Rule 36(b) motion to withdraw admission. I find that allowing rescission better serves the presentation of the merits. Whether or not the engine was running is a factor in determining whether Grindley had probable cause to arrest Wagner for driving under the influence. *See, e.g.*, *People v. Jophlin*, 2018 IL App (4th) 150802, ¶ 43. The

4

withdrawal would also not prejudice the Village, because as discussed below a dispute over whether the engine was running does not preclude summary judgment. I allow Wagner to withdraw his prior admission that the engine of his truck was running.

**B.    Summary Judgment**

*1.    Probable Cause*

Probable cause is a complete defense to all four of Wagner's claims. *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (probable cause defeats false arrest claims under the Fourth Amendment and Illinois law); *Lee v. Harris*, 127 F.4th 666, 676 (7th Cir. 2025) (probable cause is an absolute defense against malicious prosecution claims); *Hawkins v. Mitchell*, 756 F.3d 983, 994 (7th Cir. 2014) (probable cause is an absolute bar to false imprisonment claims). Whether probable cause exists is a mixed question of law and fact. *United States v. Ostrum*, 99 F.4th 999, 1004 (7th Cir. 2024). "If the underlying facts supporting the probable cause determination are not in dispute … the court can decide whether probable cause exists." *Holloway v. City of Milwaukee*, 43 F.4th 760, 769 (7th Cir. 2022) (internal quotation marks and citation omitted).

Probable cause to arrest exists where "the facts and circumstances that are known to [the officer] reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Braun*, 56 F4th at 548 (quoting *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007)). Section 11-501(a) of the Illinois Vehicle Code makes it a misdemeanor to "drive or be in actual physical control of any vehicle" while having a blood alcohol concentration of 0.08 or more or while under the influence of alcohol. 625 ILCS 5/11-501(a)(1)–(2). "A person need not

5

drive to be in actual physical control of a vehicle, nor is the person's intent to put the car in motion relevant to the determination of actual physical control." *City of Naperville v. Watson*, 175 Ill.2d 399, 402 (1997). Whether someone is in actual physical control of their vehicle is a fact-based inquiry, and factors include whether the driver is in the driver's seat of the vehicle, has possession of the ignition key, and has the physical capability of starting the engine and moving the vehicle. *Id.* Additional factors include whether the defendant is alone in the vehicle and whether the vehicle's doors were locked. *People v. Davis*, 205 Ill.App.3d 431, 435 (1st Dist. 1990). Illinois courts have found actual physical control when someone was sleeping in a vehicle that was not running and the keys were not in the ignition. *Jophlin*, 2018 IL App (4th) 150802, ¶ 43. They have also found actual physical control where a car would not start or was not drivable. *People v. Heimann*, 142 Ill.App.3d 197, 198–99 (3d Dist. 1986); *People v. Cummings*, 176 Ill.App.3d 293, 297 (3d Dist. 1988), *abrogated on other grounds by Watson*, 175 Ill.2d at 403–05. And "the presence of the motorist in the driver's seat is not an essential ingredient to a finding of actual physical control." *People v. Eyen*, 291 Ill.App.3d 38, 45 (2d Dist. 1997). Indeed, even where a defendant is in the backseat, asleep inside a zipped sleeping bag, he may be in actual physical control of his vehicle. *Davis*, 205 Ill.App.3d at 433, 436–37.

Applying the factors identified by Illinois courts, some favor Wagner. He was not in the driver's seat of the vehicle—though he did open the driver's door after Grindley knocked on the side of the sleeper cab. The keys were not in the ignition and were locked in a separate compartment that could not be accessed from where

Wagner was sleeping, which Wagner told Grindley. Taking the disputed facts in Wagner's favor, the engine was not running.

But Wagner's intoxication was readily apparent, he was alone in the vehicle, knew where the keys were and how to access them (as he explained to Grindley), and the truck was by all appearances operable. Although some factors could tip the scales in favor of an acquittal, a reasonable officer—in the absence of any binding law authorizing intoxication in the sleeper cab of a functioning truck—could believe that Wagner was in actual physical control of the vehicle. Therefore, it was reasonable to believe that Wagner had committed or was committing the misdemeanor driving under the influence. "[D]oubts and conflicting evidence that might complicate a trial do not defeat probable cause if officers had reason to err on the side of believing a crime was committed." *Trakselis v. Vill. of Just.*, No. 24-3282, 2025 WL 2505761, at *2 (7th Cir. Sept. 2, 2025); *see also Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 351 (7th Cir. 2019) ("Where a reasonable person would have a sound reason to believe the suspect committed a crime, the police may arrest and allow the criminal justice system to determine guilt or innocence.").

Grindley had probable cause to believe that Wagner was driving under the influence, and so all of Wagner's claims are barred. Summary judgment is granted for the Village.

### 2. Monell *Liability*

In the alternative, Wagner's Fourth Amendment claim fails as a matter of law because he cannot meet the *Monell* standard for liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Wagner only sues the Village of Hampshire,

not Grindley. A municipality is a "person" that can be held liable for its own violations of the federal laws and Constitution under 42 U.S.C. § 1983. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022). It is not vicariously liable for the constitutional torts of its employees. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022). To hold a municipality liable under § 1983 for the acts of its employees, first Wagner must prove he was "deprived of a federal right." *Braun*, 56 F.4th at 552. Then, Wagner must show the deprivation was connected to a municipal action. *Stockton*, 44 F.4th at 617. This may take the form of: "(1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policy making authority." *Id.*

Next, Wagner must show "culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations." *Braun*, 56 F.4th at 552 (quoting *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020)). Finally, Wagner must demonstrate causation—that the "municipal action was the 'moving force' behind the constitutional injury." *Id.* This last requirement is a "rigorous causation standard" that requires a plaintiff to show a "direct causal link" between the challenged action and the violation of his constitutional rights. *Bohanon*, 46 F.4th at 675–76 (internal quotations omitted). If there is no underlying constitutional violation by a municipal employee, the Village cannot be held liable under *Monell*. *Braun*, 56 F.4th at 552.

As explained, there was no constitutional violation by Grindley. Because there was no constitutional violation, the Village cannot be held liable under *Monell*. Even

8

if Grindley violated Wagner's constitutional rights, Wagner has made no showing that the violation was connected to a municipal policy or practice, that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, or that the challenged policy or practice caused the constitutional violation. The Village is entitled to summary judgment on Wagner's Fourth Amendment claim.

## V.    Conclusion

Defendant's motion for summary judgment, [20], is granted. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: November 18, 2025

9